Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8933 | **DATE** | 4/14/2003 |
| **CASE TITLE** | In Re: Aimster Copyright Litigation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: In an order dated 12/20/02, this Court found defendants John A. Dep, AbovePeer, Inc. and BuddyUSA, Inc. in contempt of the preliminary injunction order we issued on 10/30/02. Pending before us is the determination of attorneys' fees and costs owed to plaintiffs' counsel as well as the calculation of the fine defendants should pay to the Court. For the reasons set forth, we order defendants to pay attorneys' fees and costs in the amount of $103,850.54 to plaintiffs' counsel and a fine in the amount of $5,000.00 to the Court.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | APR 15 2003 date docketed | 103 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 4/14/2003 date mailed notice | |
| GL | courtroom deputy's initials | | GL mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In Re: Aimster Copyright Litigation ) Master File
) No. 01 c 8933
)
) Multi District Litigation #1425

**DOCKETED
APR 15 2003**

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

In an order dated December 20, 2002, this Court found Defendants John A. Deep, AbovePeer, Inc., and BuddyUSA, Inc. ("Defendants") in contempt of the Preliminary Injunction Order we issued on October 30, 2002. Pending before us is the determination of attorneys' fees and costs owed to Plaintiffs' counsel as well as the calculation of the fine Defendants should pay to the Court. For the reasons set forth below, we order Defendants to pay attorneys' fees and costs in the amount of $103,850.54 to Plaintiffs' counsel and a fine in the amount of $5,000.00 to the Court.

### I. BACKGROUND

On October 30, 2002, this Court issued a Preliminary Injunction Order enjoining Defendants and those acting in concert with them or at their direction or control (collectively "Aimster") from infringing Plaintiffs' copyrights. Defendants continued to infringe Plaintiffs' copyrights despite our issuance of the Order. Plaintiffs subsequently filed a Motion for Order to Show Cause re: Contempt. In support of their Motion, Plaintiffs filed a series of declarations documenting Defendants' infringing activity. On November 26, 2002, all parties to the case appeared before this Court on Plaintiffs' Motion. At the hearing, we set a briefing schedule that provided Defendants with an opportunity to respond to Plaintiffs' Motion. In the interim, we issued a Temporary Restraining Order on December 2, 2002 restraining

1



Defendants from continuing to infringe on Plaintiffs' copyrights.

On December 19, 2002, counsel for the Plaintiffs appeared before this Court regarding the Motion for Order to Show Cause re: Contempt. Local counsel for Defendants appeared but did not speak to the merits of Plaintiffs' Motion. Plaintiffs' counsel averred that Defendants stopped infringing on Plaintiffs' copyrights shortly after the entry of the Temporary Restraining Order, thirty-four days after the issuance of the Preliminary Injunction Order. On December 20, 2002, this Court entered an order finding Defendants in contempt of the Preliminary Injunction Order.

In accordance with our finding Defendants in contempt, we ordered Defendants to pay Plaintiffs all attorneys' fees and costs incurred in bringing the contempt action. Plaintiffs' counsel subsequently submitted statements of fees and costs, and the parties have filed memoranda concerning the amount which Plaintiffs' counsel should be awarded.[1] Furthermore, we ordered Defendants to appear before this Court regarding Plaintiffs' further request that Aimster pay to the Court the sum of $51,000.00, representing $1,500.00 for each day that Defendants were in contempt. Defendant Deep appeared before this Court *pro se* on January 28, 2003 at which time he and counsel for the Plaintiffs presented argument on the matter.

---

[1] Among Defendants, only Deep filed memoranda regarding attorneys' fees and costs. Plaintiffs argue that this Court should disregard Deep's opposition because his filings were both untimely and improperly served. While we do not condone Deep's late filing, we nonetheless consider his opposition on the merits in the interest of determining the attorneys' fees and costs in a just manner. With respect to the issue of service, Deep avers that he served all Plaintiffs by fax on February 17, 2003. In support of his statement, Deep attached a fax service list and e-mails from eFax.com confirming that the fax to each Plaintiff was successfully transmitted on that date. Whatever the cause of Plaintiffs' failure to receive proper service, they filed a reply addressing each argument Deep raised in his response.

## II. ANALYSIS

### A. Attorneys' Fees

This Court has the broad discretion to award attorneys' fees and costs for the preparation and prosecution of a contempt action. *See South Suburban Hous. Ctr. v. Berry*, 186 F.3d 851, 854 (7th Cir. 1999); *see also Matter of Establishment Inspection of Microcosm*, 951 F.2d 121, 126 (7th Cir. 1991). As the Seventh Circuit has explained, "[t]he distict court is in the best position to determine the worth of the attorneys practicing before him." *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 406 (7th Cir. 1999). The calculation of attorneys' fees involves the multiplication of hours reasonably expended by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).[2] Plaintiffs' counsel bears the burden of substantiating, to this Court's satisfaction, the reasonable rate and the hours expended. *See id.*; *see also McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 518 (7th Cir. 1993). We may increase or decrease the fee request in light of the following twelve factors the Supreme Court set forth in *Hensley*:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

461 U.S. at 429-30 n.3, 103 S.Ct. at 1938 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).[3]

Plaintiffs' counsel request a total of $118,710.03 in attorneys' fees and costs. Of this total,

---

[2] Although *Hensley* and other cases cited herein regard statutory fee awards, they are instructive in the matter presently before us.

[3] A number of these factors "are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434, n. 9.

$110,373.45 is for attorneys' fees and $8,336.58 is for costs. The work was performed by three attorneys and two paralegals from the Los Angeles firm of Mitchell Silberberg & Knupp ("MSK"), and two attorneys from the Chicago firm of Katten Muchin Zavis Rosenman ("KMZ Rosenman"). MSK is known for its work representing record companies in matters thorughout the United States involving the piracy of recordings. Recently, MSK has been lead counsel in on-line copyright infringement cases including the *Napster* litigation. MSK has been lead counsel to record companies in various actions involving the Aimster system since their commencement. When the eleven separate actions by or against Defendants were consolidated by the Judicial Panel on Multi-District Litigation ("MDL Panel") on November 17, 2001 in this Court, Plaintiffs retained KMZ Rosenman to assist with the litigation.

Plaintiffs' counsel provided detailed biographical data regarding each attorney and paralegal that assisted in the preparation and prosecution of the contempt action. MSK partner Russell Frackman has an extensive intellectual property law practice that spans thirty-two years. He bills at a rate of $500 per hour. MSK partner Patricia Benson has practiced for twenty-nine years. She specializes in complex commercial litigation, including copyright litigation, and bills at a rate of $360 per hour. MSK associate Karin Pagnanelli has been practicing for nine years during which time she has focused on copyright litigation. Her hourly rate was $256.50 for 2002, and is $279 for the year 2003. MSK paralegals Linda Bodenstein and Nancy Schafer have been involved in gathering evidence and performing paralegal tasks since the inception of this litigation and, before that, during the *Napster* litigation. Both Bodenstein's and Schafer's hourly rate is $126.

KMZ Rosenman partner Floyd Mandell has been practicing for thirty years. He specializes in intellectual property law and bills at a rate of $450. KMZ Ronseman associate Bradley Rochlen has practiced for five years during which time he has practiced extensively in the area of intellectual property law. His hourly rate is $230. The declarations of Frackman and Mandell as well as the information

Plaintiffs' counsel provided regarding the market rates in the relevant legal community support each attorney's hourly rate. Defendant Deep does not dispute the hourly rates of the attorneys or paralegals.

Plaintiffs' fee request is based on 460.6 hours of work – 277.7 hours by the five attorneys and 182.9 hours by the two paralegals. Each attorney performed several of the following tasks: researching, reviewing, and writing the Motion for Order to Show Cause re: Contempt; researching, reviewing, and writing the reply brief in support of the Motion for Order to Show Cause re: Contempt; preparing for, traveling to, and/or attending the court hearing on the Motion for Order to Show Cause re: Contempt; preparing for, traveling to, and/or attending the court hearing on Contempt; and preparing the Attorneys' Fees Submission and Declarations. Provided below is a table listing the time each attorney expended on each task:

|  | ATTORNEYS | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| **TASK** | Frackman | Benson | Pagnanelli | Mandell | Rochlen | **Total Hours Per Task** |
| Motion re: Contempt | 5.7 | 2.6 | 81.1 | 5.4 | 16.2 | 111 |
| Reply Motion re: Contempt | 2.5 | 2.8 | 26.5 | 4.2 | 2.6 | 38.6 |
| Hrg. on Motion re: Contempt | 42.5 | .2 | 22.7 | 4.5 | 12.3 | 104.5 |
| Hrg. on Contempt |  | 0 |  | 8.2 | 14.1 |  |
| Attorneys' Fees Submission & Decl. | 0 | 0 | 13.9 | 0 | 9.7 | 23.6 |
| **Total Hours Per Attorney** | 50.7 | 5.6 | 144.2 | 22.3 | 54.9 |  |

The paralegals spent 162.4 hours monitoring the Aimster system to determine if Defendants were complying with the Preliminary Injunction Order by performing the following tasks: collecting and reviewing evidence on the operation of the system; monitoring the system; analyzing changes to the

5

system; downloading and reviewing music from the system; burning the downloaded music to CDs. The paralegals also expended 20.5 hours preparing documents and exhibits for the hearing on the Motion for Order to Show Cause re: Contempt.

Deep raises five arguments regarding the reasonableness of the hours Plaintiffs' counsel expended on the contempt proceeding. First, Deep contends that Plaintiffs' counsel failed to support their request for attorneys' fees with any actual copies of billing statements demonstrating the dates on which the work was performed and when the clients were billed. Deep has failed to cite, and we have been unable to locate, any authority supporting his contention that Plaintiffs' counsel was required to submit such documentation. Indeed, the Seventh Circuit and a number of courts in this district have ruled otherwise. *See Connoly v. J.T. Ventures*, 851 F.2d 930, 935-36 (7th Cir. 1988) (counsel's itemized account and testimony of plaintiff's lawyer sufficient evidence on which to base award of attorney's fees); *see also Pepsico, Inc. v. Ortiz Mexi-Products, Inc.*, 2000 WL 198843 (N.D.Ill. Feb. 14, 2000) (declaration of plaintiff's attorney alone sufficient evidence on which to base award of attorney's fees); *Svehla v. American Can Co.*, 1999 WL 169407 *2 (N.D.Ill. Mar. 22, 1999) (original billing records unnecessary to award attorneys' fees). We are familiar with the period of time within which the contempt proceeding took place. Frackman and Mandell have provided this Court with declarations that adequately explain that the work was performed during that time and that all of the fees and costs have been or will be billed to Plaintiffs.

Second, Deep asserts that the time entries Plaintiffs' counsel provided are too vague and overbroad for this Court to determine whether the time expended was both reasonable and necessary. We disagree. This Court has a unique perspective with respect to the type of work Plaintiffs' counsel had to perform in conjunction with the contempt proceeding. The contempt proceeding occurred during a finite period of time and required that Plaintiffs' counsel and paralegals perform a finite series of tasks.

6

Plaintiffs' counsel submitted time entries that adequately describe the work each attorney and paralegal performed.

Third, Deep asks this Court to exclude all paralegal time from the award of attorneys' fees. Yet contrary to Deep's characterization of binding authority on the matter, the Seventh Circuit has long permitted the separate billing and allocation of paralegal time. *See Missouri v. Jenkins*, 491 U.S. 274, 284 n.7, 109 S.Ct. 2463, 2470, 105 L.Ed.2d 229 (1989) (noting that only the Fifth Circuit has refused to allow the recovery of paralegal time as part of an award of attorneys' fees); *see also Connolly*, 851 F.2d at 935-36 (paralegal fees recovered in attorneys' fees award in contempt proceeding); *Spanish Action Comm. of Chicago v. City of Chicago*, 811 F.2d 1129, 1138 (7th Cir. 1987). Indeed, this district has allocated paralegal fees as part of an attorneys' fees award. *See Pepsico*, 2000 WL 198843.

Fourth, Deep argues that the total amount of time Plaintiffs' counsel expended – 460.6 hours – was excessive. Deep contends that his *pro se* status obviated the need for Plaintiffs to dedicate five attorneys and two paralegals to the preparation and prosecution of the contempt action against him. We disagree. Plaintiffs are entitled to effectively litigate a matter regardless of whether an opposing party is represented by counsel. We believe the task of Plaintiffs' counsel to effectively litigate the contempt action against Deep was made more difficult and time consuming because of his *pro se* status. *See Rose v. Racine Correctional Inst.*, 141 F.R.D. 105, 108 (E.D.Wis. 1992) ("[p]rocessing a case involving a pro se plaintiff makes the court's task, and opposing counsel's, far more difficult and time consuming."). We therefore conclude that the number of attorneys and paralegals who worked on the contempt proceeding was not excessive in light of Deep's lack of representation.

Deep further asserts that this Court should disregard all work other than that performed by local counsel, KMZ Rosenman. We decline to do so. Where it is efficient and sensible for a party to have local and national counsel, that party may recover attorneys' fees performed by both. *See Curry v. A.H.*

7

*Robins Co.*, 101 F.R.D. 736, 738 (N.D.Ill. 1984). Here, the MDL status of the Aimster litigation and Local Rule 83.15(a) requiring local counsel made it both reasonable and necessary for Plaintiffs to retain local and national counsel. Plaintiffs selected MSK as their lead counsel long before the MDL Panel consolidated the litigation in this Court. Plaintiffs selected KMZ Rosenman as local counsel after the consolidation took place. MSK and, to a lesser extent, KMZ Rosenman performed the substantive work with respect to the contempt proceedings. Thus, we may award attorneys' fees for the work performed by both firms.

Fifth, Deep argues that the amount of time certain attorneys and both paralegals billed was excessive.[4] MSK partner Russell Frackman performed a total of 50.7 hours of work on the contempt proceeding. Deep objects to the 42.5 hours that Frackman spent preparing for, traveling to, and attending the court hearing on the Motion for Order to Show Cause re: Contempt, and the court hearing on Contempt. Deep particularly contests the amount of time Frackman spent traveling from Los Angeles to Chicago for both court hearings. As Frackman set forth in his declaration, he attended both court hearings at which only he and Floyd Mandell argued on behalf of the Plaintiffs. Given Frackman's critical role, we find that it is reasonable to award attorneys' fees not only for the time he allocated in preparing for and attending the hearings, but also for the time he spent traveling to those hearings.

Deep also objects to the 144.2 hours that MSK associate Karen Pagnanelli and the 54.9 hours KMZ Associate Bradley Rochlen worked on the contempt proceeding. He contends that the time spent was duplicative and "grossly excessive " for "essentially routine" tasks. We disagree. In contrast to Deep's perception of the contempt action, this Court does not view the matter or the work Plaintiffs' counsel performed to be "essentially routine." Together, Pagnanelli and Rochlen provided the research

---

[4]Deep does not object to the amount of time MSK partner Patricia Benson and KMZ Rosenman partner Floyd A. Mandell expended.

for and the drafts of the Motion for Order to Show Cause re: Contempt as well as the reply brief to the Motion. They contributed to the preparation for both court hearings on the matter. Finally, they thoroughly prepared the Attorneys' Fees Submission and Declaration. Pagnanelli's and Rochlen's work was reasonable, not duplicative or excessive. Indeed, that associates rather than partners performed most of the work resulted in reduced, rather than increased, costs. We do, however, reduce Rochlen's billable time by two hours from 54.9 to 52.9 total hours to reflect the deduction of the time he billed for attending court hearings at which his presence was unnecessary in light of the written briefs Plaintiffs' counsel submitted and the oral advocacy Mandell and Frackman provided.

Deep finally takes issue with the paralegals' billable time of 182.9 hours, particularly the 162.4 hours spent determining if Defendants were in compliance with the Preliminary Injunction Order. During those hours, Linda Bodenstein and Nancy Schafer searched for and downloaded 343 of Plaintiffs' copyrighted works and downloaded the 100 most copyrighted works at the time from the Billboard Hot 100. Deep posits that it would have taken minutes, not hours, to determine if Defendants were complying with our Order. While we disagree with Deep's assessment of how long Linda Bodenstein and Nancy Schafer should have allocated in assessing Defendants' compliance, we do agree that their billable time should be reduced. The entire volume of information Bodenstein and Schafer collected was helpful, but not necessary for this Court to find Defendants in contempt of the Order. Accordingly, we reduce the paralegals' billable time spent determining Defendants' compliance of 162.4 hours by 50% to 81.2 hours. We do not reduce the 20.5 hours Bodenstein and Schafer allocated to preparing documents and exhibits for the hearing on Contempt. Thus, the amended billable time for the paralegals totals 101.7 hours.

Having evaluated the submissions and declarations of Plaintiffs' counsel as well as Deep's argument, we calculate the award of attorneys' fees below. With respect to MSK, Frackman performed

50.7 hours of work on this matter at a rate of $500 per hour, for a total of $25,350.00. Benson performed 5.6 hours of work at a rate of $360 per hour, for a total of $2,016.00. Pagnanelli performed 144.2 hours of work, 130.3 of which was billed at $256.50 per hour, and 13.9 of which was billed at $270 per hour, for a total of $37,300.05. The paralegals performed 101.7 hours of work at a rate of $126, for a total of $12,814.20. With regard to KMZ Rosenman, Mandell performed 22.3 hours of work on this matter at a rate of $450 per hour, for a total of $10,035.00. Rochlen performed 52.9 hours of work at a rate of $230, for a total of $12,167.00. We therefore award a total of $99,682.25 in attorneys' fees to Plaintiffs' counsel – $77,480.25 to MSK and $22,202.00 to KMZ.

Plaintiffs' counsel also request costs in the amount of $8,336.58 for travel expenses – $6,826.80 for airline tickets and $1,509.78 for hotel stays – for Frackman and Pagnanelli to attend the court hearings on November 26, 2002 and December 19, 2002. While Frackman spoke during both hearings, Pagnanelli did not speak on either date. The litigation of a case is often complex enough so as to necessitate the presence of counsel that contribute in ways other than addressing the court. In this case, however, Plaintiffs' counsel effectively litigated the contempt action against Defendants through written briefs submitted to this Court and the oral advocacy provided by Frackman and Mandel. Pagnanelli's presence at the court hearings was unnecessary and excessive. Consequently, we reduce Plaintiffs' costs by 50%, representing the Pagnanelli's travel expenses, to $4,168.29. In light of the above analysis and calculations, we order Defendants to pay Plaintiffs' counsel total attorneys' fees and costs in the amount of $103,850.54.

### B. FINE

This Court may impose sanctions for civil contempt in order to coerce compliance with a court order or to compensate the complainant for losses incurred as a result of the contumacy. *See United States v. United Mine Workers of America*, 330 U.S. 258, 303-04, 67 S.Ct. 677, 701-02, 91 L.Ed. 884

(1947). Where, as here, the purpose is compensatory, "a fine . . . must be based on evidence of actual loss." *South Suburban Hous. Ctr. V. Berry*, 186 F.3d 851, 854 (7th Cir. 1999) (citation omitted). The "contemnor's profits may be a proper measure of damages for civil contempt." *Connolly*, 851 F.2d at 934. In this case, Plaintiffs' request that Defendants pay to the Court $51,000.00 representing $1500.00 for each day that the Defendants were in contempt. In support of their request, Plaintiffs' presented evidence to this Court that Defendants' profited approximately $1,500.00 each day they were in contempt.

Defendants violated this Court's Preliminary Injunction Order. That violation must be addressed and vindicated. Yet the issue before us is one of proportionality. The litigation of this case and the rulings of this Court have put Defendants out of business. Thus, Defendants' plight juxtaposed with Plaintiffs' power, prestige, and influence within the recording industry dictate that this Court exercise discretion in the imposition of a fine. The case before us does not present a situation where Defendants' violation of the Order will only be cured by ordering them to pay the entire amount Plaintiffs requested. We believe a $5,000.00 fine is enough to vindicate the violation of this Court's Order in light of Defendants' expenses in litigating this case as well as their loss of business. Thus, we order Defendants to pay the Court a fine in the amount of $5,000.00

## III. CONCLUSION

For the foregoing reasons, we order Defendants to pay attorneys' fees and costs in the amount of $103,850.54 to Plaintiffs' counsel and a fine in the amount of $5,000.00 to the Court. It is so ordered.

MARVIN E. ASPEN

United States District Judge

Dated 4/14/03